IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SCOTT KELLY HANSEN,**                     Case Number 3:15 CV 44

      Petitioner,                                        Chief Judge Solomon Oliver, Jr.

     v.                                                    Magistrate Judge James R. Knepp II

**DONALD MORGAN**, Warden,

      Respondent.                                    REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Scott Kelly Hansen ("Petitioner"), a prisoner in state custody, filed a

petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) with an attached

memorandum (Doc. 1-1). Respondent, Warden Donald Morgan, filed an answer (Doc. 21) with

supplemental exhibits (Doc. 21-1). After a period of time in which the Court stayed this matter so

that Petitioner could exhaust his state-court remedies, Petitioner filed an "Amended Petition" (Doc.

36), which Respondent opposed (Doc. 40). The district court has jurisdiction over this petition under

28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and

Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated September 23,

2016).[1] Following review and for the reasons stated below, the undersigned recommends the Petition

be denied.

---

[1] Petitioner originally filed this case in United States District Court for the Southern District
of Ohio, which transferred it to this Court. (Doc. 2). The case was assigned to District Court Judge
David A. Katz, who referred it to the undersigned for a Report and Recommendation. (Non-
document entry dated January 9, 2015; Doc. 6). On August 12, 2016, the case was transferred to
Chief Judge Solomon Oliver, Jr., who again referred it to the undersigned for a Report and
Recommendation.

### PROCEDURAL BACKGROUND

In 1981, three Ohio courts in four separate criminal cases sentenced Petitioner to a total term of four and a half to twenty-five years' imprisonment. In the first, on July 17, 1981, the Lucas County Court of Common Pleas sentenced Petitioner to two to ten years in prison for retaining stolen property–motor vehicle and one to five years in prison for disposing of stolen property, to be served consecutively to each other but concurrently to any prison sentence imposed by the Wood County Court of Common Pleas, described below. (Doc. 21-1, Ex. 1). That same day, the same Lucas County court sentenced Petitioner in a separate case to one to five years' imprisonment for grand theft with a prior-conviction specification, to be served consecutively to the sentence imposed by that court in the case described above. (Doc. 21-1, Ex. 2). On July 20, 1981, the Wood County court sentenced Petitioner to three to ten years' imprisonment for receiving stolen property, to be served concurrently with the Lucas County court sentences. (Doc. 21-1, Ex. 3). And on December 29, 1981, the Marion County Court of Common Pleas sentenced Petitioner to six months to five years in prison for an attempted prison escape, to be served consecutively to his prior prison sentences. (Doc. 21-1, Ex. 4). Petitioner entered guilty pleas to all charges of which he was convicted. (Doc. 21-1, Exs. 1-4).

Petitioner states he did not file any direct or post-conviction appeals relating to these convictions or sentences. (Doc. 1, at 2-5).

On August 27, 1984, the Ohio Adult Parole Authority ("OAPA") released Petitioner from state prison on a one-year term of parole supervision. (Doc. 21-1, Ex. 5). Less than one month later, however, on September 21, 1984, Petitioner was arrested and charged in this federal District Court with bank robbery. (Doc. 21-1, Ex. 8). As a result, the OAPA declared Petitioner a "parole violator

in custody" effective October 4, 1984, which tolled the service time on his original 1981 sentences. (Doc. 21-1, Ex. 9). On September 5, 1985, he was convicted and sentenced to ten years in federal prison. (Doc. 21-1, Ex. 6, at 22). The OAPA then lodged a state detainer warrant with the Federal Bureau of Prisons ("FBOP"), declaring its intention to pursue Petitioner's eventual extradition to Ohio once he completed his federal sentence. (Doc. 21-1, Ex. 8).

Petitioner was released from federal prison on May 24, 1991. *Id.* The OAPA restored his parole status on May 28, 1991 (Doc. 21-1, Ex. 9), and Petitioner began serving a one-year period of parole supervision (Doc. 21-1, Ex. 8). Petitioner reported to Ohio parole authorities for the last time on June 5, 1991. *Id*. On July 20, 1991, he was arrested in Oregon, Ohio, and charged with numerous parole violations and new federal and state felonies that he committed while on parole, including bank robbery. (Doc. 21-1, Exs. 8, 10). He waived his right to a parole violation hearing on July 24, 1991. (Doc. 21-1, Ex. 8).

On October 8, 1991, Petitioner was convicted of federal bank robbery charges in this Court and sentenced to eleven years in federal prison with a three-year term of supervised release. (Doc. 21-1, Ex. 6 at 22). Two days later, the OAPA again declared Petitioner a parole violator in custody, which again tolled the service time on his original 1981 sentence. (Doc. 21-1, Ex. 8). Although the OAPA sent the FBOP a state detainer warrant on October 31, 1991, the FBOP released Petitioner from prison on October 17, 1997, without notifying Ohio authorities. (Doc. 21-1, Exs. 6, 11). On April 7, 1998, the OAPA learned of Petitioner's release from federal prison and declared him a "parole violator at large." (Doc. 21-1, Exs. 11, 12).

On February 11, 2000, Petitioner was convicted of bank robbery and escape from prison in the U.S. District Court for Rhode Island and sentenced to a total of 221 months in prison, or just

over eighteen years and four months, with three years of supervised release. (Doc. 21-1, Ex. 6, at 22). On August 31, 2005, the OAPA again lodged a state detainer warrant with the FBOP. (Doc. 21-1, Ex. 13).

While in federal custody, Petitioner filed three lawsuits in federal court regarding his Ohio parole status. In one, he sued the Ohio Department of Rehabilitation & Correction ("ODRC"), *pro se*, to prevent his return to an Ohio prison after his release, claiming he would be in "grave danger" there because of testimony he gave during the 1990s for which he was placed in the federal witness protection program in 1994 and 1997. *See Hansen v. Collins*, 2010 WL 3702558, at *1 (S.D. Ohio Sept. 16, 2010). In another, this time represented by counsel, he again sued the ODRC regarding the risk of harm if he was returned to prison in Ohio. *See Hansen v. Dir., Ohio Dep't Rehab. & Corr.*, 2014 WL 2117083, at *1 (S.D. Ohio May 21, 2104). And in a third, he sued several federal governmental agencies, *pro se*, alleging they placed his life at risk by failing to inform him of the existence of the Ohio detainer that ultimately would effect his return to Ohio. *See Hansen v. Lappin*, 800 F. Supp. 2d 76, 77-80 (D.D.C. 2011). All three cases were dismissed. *Hansen v. Collins*, 2010 WL 3702558, at *1; *Hansen v. Dir., ODRC*, 2014 WL 2117083, at *1; *Hansen v. Lappin*, 800 F. Supp. 2d at 84.

Petitioner was released from federal prison on August 10, 2014. (Doc. 21-1, Ex. 17). He waived extradition to Ohio and was returned to ODRC custody. *Id*.

On August 19, 2014, the OAPA notified Petitioner that it was conducting a parole release violation hearing, and informed him of the allegations against him and his rights at the hearing. (Doc. 21-1, Ex. 16). It offered Petitioner the right to request counsel to represent him at the hearing and to subpoena evidence or witnesses to appear on his behalf, which he refused. *Id.* at 75. Petitioner

4

admitted in advance of the hearing that he violated Ohio parole rules through his 1991 conviction

for unarmed bank robbery and his 1998 escape from detention.[2] *Id.* at 74. The hearing was held on

September 8, 2014. (Doc. 21-1, Ex. 17, at 76). The hearing officer found that Petitioner committed

the two release violations and recommended a 24-month "revocation time" before he would be

considered for release on parole. *Id.* The Ohio Parole Board then considered the details of

Petitioner's offenses and other factors, such as Petitioner's criminal history and ability to control his

behavior, and voted to adopt the hearing officer's recommendation. *Id.* at 78. It concluded:

> Due to the Offender's continuous pattern of repeated violation behaviors, to include
> New Felony Convictions of Bank Robbery and Escape, the Hearing Officer's
> Recommendation is Approved. The Offender is to serve a 24 Month period of
> incarceration prior to a subsequent Release Consideration hearing before the Ohio
> Parole Board in August 2016.

*Id.* The OAPA issued a Revocation Order that day. (Doc. 21-1, Ex. 19). It notified Petitioner of its

determination in writing. (Doc. 21-1, Exs. 18, 20).

### FEDERAL HABEAS CORPUS

Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on

January 5, 2015. (Doc. 1). In it, he raised the following three grounds for relief:

1.    The Ohio Adult Parole Authority, [H]earing [O]fficer Mr. Ronald E. Nelson,
      violated this petitioners [*sic*] protection, under the Fourteenth Amend[ment]
      of the U.S. Constitution, Due Process[,] [a]nd also (Ohio Revised Code),
      pursuant to Section[] 2967.15, which only authorize's [*sic*] the (O.A.P.A.) to
      charge, issue a finding of fact, and impose a prison sanction under Ohio
      [l]aw[] [f]or a person[] who is under release condition's [*sic*], under the
      supervision of the (O.A.P.A.)[.]

2.    [T]he actions[] and sanction's [*sic*] imposed by the (O.A.P.A.) on [September
      8, 2014], for what should have been a technical rule violation, of (24) year's

---

[2] Petitioner admitted the 1991 bank robbery conviction, but admitted "with [m]itigation" his
1998 escape from detention. (Doc. 21-1, Ex. 16 at 74).

[*sic*] ago[] [i]s retaliation against this petitioner, due to (two) previously filed federal lawsuit[s] against the (O.A.P.A.) and (O.D.R.C.)[.] [*See*] Hansen v. Collins, (2:09-cv-517) and also (Hansen v. Director, (O.D.R.C.) (2:12-cv-773). . . . Petitioner claim's [*sic*] such retaliation[] violate's [*sic*] the Eighth Amend[ment] harsh, crual [*sic*], [and] unusual punishment.

3.    [T]he minor property offense's [*sic*], sentence's [*sic*], imposed on this petitioner in July 1981 are (non-violent) property offense's [*sic*], with a (zero) dollar's [*sic*] loss to anyone. . . . These current sentence's [*sic*], and the current incarceration of this petitioner[] violate's [*sic*] petitioners [*sic*] protection's [*sic*] under the Eighth Amend[ment] [o]f the U.S. Constitution.

(Doc. 1-1, at 4, 5-6, 7-8). On March 30, 2015, Petitioner moved to add two exhibits to his Petition, which the Court granted. (Docs. 13, 17). He also filed a motion that day requesting that the Court order the OAPA to produce a video of his release violation hearing, which was denied. (Docs. 14, 18).

On June 27, 2015, Respondent filed an answer. (Doc. 21). On July 6, 2015, Petitioner moved to withdraw his Petition, which Respondent opposed. (Docs. 22, 23). On October 16, 2015, Petitioner requested an evidentiary hearing due to "knew [*sic*] and extenuating circumstances[,]" which Respondent opposed. (Docs. 25, 26). On December 7, 2015, the undersigned issued a report recommending that the Court: 1) deny Petitioner's motion to withdraw his Petition; 2) dismiss Petitioner's challenges to his 1981 convictions as time-barred; and 3) stay the proceedings regarding Petitioner's challenges to the legality of his September 2014 release violation hearing so that Petitioner could exhaust his available state-court remedies regarding this claim. (Doc. 28). The undersigned also denied Petitioner's request for an evidentiary hearing without prejudice as premature and denied his emergency motion for an evidentiary hearing. *Id.* Over Respondent's objection (Doc. 30), the Court adopted the report on December 29, 2015 (Doc. 31). The Court stayed

this case pending Petitioner's exhaustion of state-court remedies, after which Petitioner had sixty days to "advise the Court and amend the petition to include any newly exhausted claims." *Id.* at 2.

On July 28, 2016, Petitioner filed an Amended Petition for Writ of Habeas Corpus. (Doc. 36). In it, he explains that he "exhausted state remedies." *Id.* at 2. He first filed a petition for writ of mandamus in the Ohio Supreme Court, which the court summarily dismissed on February 17, 2016. *Id.* at 3-4. *See also* http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2016/0125. He then filed a wrongful imprisonment action against the OAPA in the Lucas County Court of Common Pleas, which was dismissed on July 21, 2016. *Id.* at 4-5; *see also* Doc. 39. Petitioner also has moved for an evidentiary hearing, which Respondent opposes. *See* Docs. 36, 37, 38, 40, 41, 42, 44.

Respondent opposed Petitioner's Amended Petition on August 4, 2016. (Doc. 40). He argues that the Amended Petition was filed without leave in violation of Federal Civil Rule 15(a)(2) and that it does not comply with Habeas Rule 2, which requires that habeas petitioners specify all grounds for relief. *Id.* at 1-4.

As best the undersigned can discern, Petitioner does not add any new claims in his Amended Petition; nor does he advance new arguments or present new evidence. He seems to repeat the arguments he made in his original Petition. The undersigned therefore construes Petitioner's Amended Petition as a supplemental brief in support of his original Petition, and will address the Petition's first two grounds for relief, the third ground for relief having already been dismissed (Doc. 31).

## DISCUSSION

In Petitioner's first ground for relief, he alleges he was denied due process when the OAPA revoked his parole and imposed a 24-month "revocation time" (a period of incarceration imposed

upon parole revocation before eligibility for parole release consideration) based in part on an erroneous finding. *See, e.g.*, Doc. 36, at 8. While he admits to the first of the two parole rule violations the OAPA found, a 1991 bank robbery conviction, he denies the second, a 1998 escape from detention. *Id.* Petitioner argues he was in federal custody in 1998, and no longer under OAPA parole release supervision. (Doc. 1-1, at 2-3). He further claims the OAPA "re-calculated" his sentence for the underlying 1981 offenses and imposed a "new maximum sentence date of Oct. 2035" based on the allegedly improper second rule violation. (Doc. 36, at 9). In his second ground for relief, Petitioner contends these improper actions were carried out in retaliation for the lawsuits he filed against the OAPA and ODRC. (Doc. 1-1, at 5-6). For relief, he asks the Court to "order re-hearing, or vacate finding's [*sic*] [and] sanction's [*sic*], relevant to release violation hearing held on Sept[ember] 8, 2014, and or terminate sentence's [*sic*] imposed in 1981." (Doc. 1, at 15).

Respondent argues that, to the extent Petitioner's first two grounds for relief challenge state sentencing rules and laws, they are not cognizable on federal habeas review. (Doc. 21, at 17). And to the extent the claims implicate any federal constitutional rights, he asserts, they lack merit. *Id.* The undersigned agrees the claims are not cognizable, and finds that, in any event, they lack merit.

**Cognizability of Petitioner's Claims**

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107,

121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).

Thus, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus. *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003). This includes matters relating to a prisoner's early release on parole. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Simply put, there is no federal constitutional right to parole. *See, e.g., Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Michael v. Ghee*, 498 F.3d 372, 377–78 (6th Cir. 2007); *Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990).

A state's laws may nonetheless create a constitutionally protected liberty interest in parole. *Thompson*, 490 U.S. at 460 (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). But only if the state law *entitles* the prisoner to release on parole. *E.g., Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991) (citing *Greenholtz*, 442 U.S. at 7). "[A] mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest . . . ." *Id.* A state does not have a constitutional duty to establish a parole system, and the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Greenholtz*, 442 U.S. at 7, 11; *see also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).

Ohio law has created no such liberty interest in a prisoner's release on parole. The Ohio Supreme Court squarely has held:

> A prisoner has no constitutional or statutory right to parole. . . . Because there is no such right, a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary. . . . Under R.C. 2967.03, the parole decision in Ohio is discretionary. . . . And we have held that because a potential parolee was not deprived of life, liberty, or property by being denied parole, he could not invoke due process to challenge his allegedly inaccurate scoresheet.

*State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St. 3d 375, 378 (Ohio 2014) (internal citations omitted); *see also Walls v. Haskins*, 24 Ohio St. 2d 36, 37(Ohio 1970) ("[P]arole is purely a matter of grace, not of right. There is no legal duty on the state to grant a parole; there is no right to a review of its revocation."); *Jago v. Van Curen*, 454 U.S. 14 (1981) (holding that the OAPA's rescission of a decision to grant parole on or after a specified date did not constitute a deprivation of "liberty" within the meaning of the Due Process Clause); *Inmates of Orient Corr. Inst.*, 929 F.2d at 235 (holding that Ohio law does not entitle inmates to parole before the expiration of a valid sentence of imprisonment and, consequently, does not create a liberty interest in parole).

Furthermore, the Supreme Court has set forth minimum due process requirements for the revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). These include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id*. The *Morrissey* Court emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry . . . ." *Id*.

But Petitioner makes no allegations concerning the *process* or *procedures* the OAPA employed to revoke his parole, only the *results* of that process. Indeed, the record makes clear that

10

the OAPA fully complied with *Morrissey*'s limited due process requirements. Just nine days after Petitioner was returned to Ohio on August 10, 2014, the OAPA provided him written notice of a release violation hearing. (Doc. 21-1, Ex. 16). It informed him of his right to obtain counsel to represent him at the hearing and to subpoena evidence or witnesses to appear on his behalf, which he waived. *Id.* at 75. The hearing was held on September 8, 2014. (Doc. 21-1, Ex. 17). The hearing officer found Petitioner committed two release violations – a 1991 bank robbery conviction (to which Petitioner admitted) and absconding out of state in 1998 (to which he admitted "with mitigation"). *Id.* He recommended Petitioner's parole status be revoked and a 24-month "revocation time" before Petitioner could be considered again for parole release. *Id.* The Ohio Parole Board then reviewed the details of Petitioner's offenses and other factors, such as Petitioner's criminal history and ability to control his behavior, and voted to adopt the hearing officer's recommendations. *Id.* at 78. The Parole Board set August 2016 for Petitioner's next release consideration hearing. *Id.* Finally, the OAPA notified Petitioner in writing of its findings and sanctions. (Doc. 21-1, Exs. 19, 20).

The record clearly demonstrates, therefore, that even if Petitioner had asserted a due process claim under *Morrissey*, it would fail. As it is, Petitioner's claims sound only in state law. Accordingly, Petitioner's first and second grounds for relief are not cognizable on federal habeas corpus review, and the undersigned recommends that the Court dismiss the claims for that reason.

**Merits of Petitioner's Claims**

The undersigned further notes, however, that not only are Petitioner's claims noncognizable (and that alone is sufficient ground for their dismissal) but they are wholly unfounded. To support his claim that he did not violate his parole in 1998 by absconding, Petitioner points to a letter OAPA Parole Program Specialist/Fugitive Coordinator Chris Gerren wrote to him in 2009 while he was in

11

federal prison, explaining his parole status in Ohio (Doc. 21-1, Ex. 8). (Doc. 1-1, at 2). Petitioner

focuses on the following statements in the letter:

> You were officially declared a Parole Violator in Custody on 10-10-91, which tolled
> or stopped your ODRC service time on your original sentence from 1981. . . .
>
> Regarding our detainer with the Federal authorities, it should be noted that the 12-2-
> 98 date listed on the warrant as a parole date is merely the date of an administrative
> action. This action was taken as a result of your further activity within the Federal
> system and has no effect on your service time. As I stated in the previous paragraph,
> your last official parole date from our agency was 5-28-91, when you were released
> from Federal custody and reported to Ohio parole authorities in Toledo, Ohio.

*Id*. Petitioner seems to interpret this language to mean that after October 10, 1991, he was no longer

"on parole for the state of Ohio[,]" and the OAPA, therefore, could not hold him accountable for his

subsequent conduct. *Id*. It also shows, he argues, that the 1998 OAPA detainer warrant was merely

an "administrative action" that had "nothing to do with [his] service time, or anything like that[,]"

apparently discounting the warrant as evidence that he was still under OAPA parole supervision at

the time. *Id*.

Petitioner presents no evidence, however, that he was in federal custody in 1998, or that the

OAPA ever released him from parole supervision for the 1981 convictions. As the Ohio Supreme

Court has explained, in Ohio,

> [p]arole is . . . a form of supervised release, but it is not merely an addition to an
> individual's sentence. When a person is paroled, he or she is released from
> confinement before the end of his or her sentence and remains in the custody of the
> state until the sentence expires or the Adult Parole Authority grants final release.
> R.C. 2967.02(C); 2967.13(E); 2967.15(A); 2967.16(C)(1). If a paroled person
> violates the various conditions associated with the parole, he or she may be required
> to serve the remainder of the original sentence . . . . Ohio Adm. Code
> 5120:1–1–19(C).

*State v. Clark*, 119 Ohio St. 3d 239, 246 (Ohio 2008). Final parole release may be granted only

"when a paroled prisoner has faithfully performed the conditions and obligations of [his] parole and

12

has obeyed the rules and regulations adopted by the [OAPA] that apply to the paroled prisoner."
Ohio Rev. Code § 2967.16(A). A paroled prisoner has not been granted final parole release unless
the superintendent of parole supervision recommends final release, the OAPA enters a final release
upon its minutes, and the OAPA issues a certificate of final release. *Id*.

Here, the record shows that in October 1991, Petitioner stopped serving his incomplete one-
year parole term related to his 1981 Ohio convictions because he was incarcerated in federal prison.
(*See* Doc. 21-1, Ex. 8). Then, in April 1998, the ODRC learned that the FBOP had released
Petitioner from federal prison in October 1997 without notifying Ohio authorities, and it considered
Petitioner a parole violator at large. (Doc. 21-1, Ex. 11). Therefore, as the Gerren letter tried to
explain, Petitioner's "ODRC service time on his original sentence from 1981" was "stopped" or
"tolled" after October 1991, but only in that he was no longer earning credit toward his one-year
term of parole supervision because he was either in federal custody or had absconded and escaped
from detention – not because he was no longer "on parole" in Ohio and under OAPA parole
supervision, or more broadly, under the state of Ohio's custody. In 1998, Petitioner was indeed
neither in federal custody nor released from OAPA parole supervision. The OAPA's finding that he
violated parole rules by absconding in 1998 was correct.

The record also belies Petitioner's claim that his 24-month revocation time was "a prison
term of (two) year's [*sic*], . . . one year on each violation" (*see* Doc. 1-1, at 3), and that the second
rule violation led to a "recalculation" of his maximum sentence for the 1981 convictions (Doc. 36,
at 9). First, the Revocation Order states only that Petitioner would "serve 24 months of the sentence
from the availability date before again becoming eligible for parole release consideration." (Doc.
21-1, Ex. 19). There is no delineation of the "revocation time" between the two rule violations.
Petitioner cannot show, therefore, that the second rule violation had any effect on the OAPA's

13

determination at all. Petitioner admitted to the first violation, and the OAPA could have revoked his parole and imposed the same revocation time for that violation alone.

Moreover, "the revocation of . . . parole in Ohio merely constitute[s] an administrative proceeding that reinstate[s] [the prisoner's] original sentence for which he was on parole." *Johnson v. Smith*, 2009 WL 1110779, at *6 (Ohio Ct. App. Apr. 27, 2009). Thus, "not only is a parole revocation hearing not a proceeding which could result in a conviction, the revocation itself does not constitute punishment." *Id*. As the Hearing Summary Report demonstrates, the 24-month revocation time was not an additional sentence but a period of time to be served "prior to a Release Consideration hearing before the Ohio Parole Board." (Doc. 21-1, Ex. 18). *See* Ohio Admin. Code § 5120:1-1-18(C) ("If the parole board member or hearing officer orders the revocation and return to a correctional institution of a releasee subject to the discretionary releasing authority of the parole board, the parole board member or hearing officer shall also determine the time to be served before the next parole consideration hearing, when applicable."). The revocation time had no bearing on Petitioner's original 1981 sentences, which he is now serving. Petitioner's claims, therefore, are meritless.

Nevertheless, the undersigned recommends that the Court dismiss with prejudice Petitioner's first and second grounds for relief because the claims are not cognizable on federal habeas corpus review.

## CONCLUSION AND RECOMMENDATION

Grounds One and Two are non-cognizable on federal habeas review. There has been no demonstrated need for an evidentiary hearing, and the undersigned recommends that Petitioner's requests for an evidentiary hearing (Docs. 37, 38) be denied. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of

actual innocence. The undersigned therefore recommends the Petition (Doc. 1) be denied and dismissed in its entirety.

s/James R. Knepp II

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).